IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

IN RE: BOSTON SCIENTIFIC CORP.,
  PELVIC REPAIR SYSTEM
  PRODUCTS LIABILITY LITIGATION

MDL No. 2326

-------------------------------------------------------------

THIS DOCUMENT RELATES TO THE FOLLOWING CASE:

*Rose Flores-Banda v. Boston Scientific Corp.*            No. 2:13-cv-4434

Pending before the court is the defendant's Motion for Summary Judgment Based on Statute of Limitations ("Motion") [Docket 20]. For the reasons set forth below, the Motion is **GRANTED in part** and **DENIED in part**.

I.    **Background**

This case resides in one of seven MDLs assigned to me by the Judicial Panel on Multidistrict Litigation concerning the use of transvaginal surgical mesh to treat pelvic organ prolapse ("POP") and stress urinary incontinence ("SUI"). In the seven MDLs, there are more than 70,000 cases currently pending, approximately 15,000 of which are in the Boston Scientific Corp. ("BSC") MDL, MDL 2326. In an effort to efficiently and effectively manage this massive MDL, I decided to conduct pretrial discovery and motions practice on an individualized basis so that once a case is trial-ready (that is, after the court has ruled on all *Daubert* motions, summary judgment motions, and motions *in limine*, among other things), it can then be promptly transferred or remanded to the appropriate district for trial. To this end, I ordered the plaintiffs and defendant to each select 50 cases, which would then become part of a "wave" of cases to be prepared for trial and, if necessary, remanded. (*See* Pretrial Order # 65, *In re: Boston Scientific*

*Corp. Pelvic Repair Sys. Prods. Liab. Litig.*, No. 2:12-md-002326, entered Dec. 19, 2013, *available at* http://www.wvsd.uscourts.gov/MDL/boston/orders.html). This selection process was completed twice, creating two waves of 100 cases, Wave 1 and Wave 2. The plaintiff's case was selected as a Wave 2 case by Ms. Flores-Banda.

On December 12, 2005, Ms. Flores-Banda was surgically implanted with the Obtryx Transobturator Mid-Urethral Sling System (the "Obtryx"), a product manufactured by BSC to treat SUI. (*See* BSC's Mot. for Summ. J. & Mem. of Law in Supp. ("Mem. in Supp.") [Docket 20], at 2). She received her surgery at a hospital in Texas. (*Id.*). Ms. Flores-Banda claims that as a result of implantation of the Obtryx, she has experienced multiple complications, including pain, urinary problems, and erosion. (*Id.* at 3). She brings the following claims against BSC: strict liability for design defect, manufacturing defect, and failure to warn; negligence; breach of express and implied warranty; and punitive damages. (Short Form Compl. [Docket 1], at 5). In the instant motion, BSC argues that each of the plaintiff's claims is barred by Texas's statute of limitations, and consequently, the court should grant summary judgment in favor of BSC and dismiss Ms. Flores-Banda's case.

## II. Legal Standards

### A. Summary Judgment

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the court will not "weigh the evidence and determine the truth of the matter." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). Instead, the court will draw any permissible inference from the underlying facts in

the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986).

Although the court will view all underlying facts and inferences in the light most favorable to the nonmoving party, the nonmoving party nonetheless must offer some "concrete evidence from which a reasonable juror could return a verdict in his [or her] favor." *Anderson*, 477 U.S. at 256. Summary judgment is appropriate when the nonmoving party has the burden of proof on an essential element of his or her case and does not make, after adequate time for discovery, a showing sufficient to establish that element. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The nonmoving party must satisfy this burden of proof by offering more than a mere "scintilla of evidence" in support of his or her position. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or unsupported speculation, without more, are insufficient to preclude the granting of a summary judgment motion. *See Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987); *Ross v. Comm'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir. 1985), *abrogated on other grounds*, 490 U.S. 228 (1989).

### B. Choice of Law

Under 28 U.S.C. § 1407, this court has authority to rule on pretrial motions in MDL cases. The choice of law for these pretrial motions depends on whether they concern federal or state law:

> When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation.

*In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig.*, 97 F.3d 1050, 1055 (8th Cir. 1996) (internal citations omitted). To determine the applicable state law for a dispositive motion based on the statute of limitations, I generally refer to the choice-of-law rules of the jurisdiction

3

where the plaintiff first filed her claim. *See In re Air Disaster at Ramstein Air Base, Ger.*, 81 F.3d 570, 576 (5th Cir. 1996) ("Where a transferee court presides over several diversity actions consolidated under the multidistrict rules, the choice of law rules of each jurisdiction in which the transferred actions were originally filed must be applied."); *In re Air Crash Disaster Near Chi., Ill.*, 644 F.2d 594, 610 (7th Cir. 1981); *In re Digitek Prods. Liab. Litig.*, MDL No. 2:08-md-01968, 2010 WL 2102330, at *7 (S.D. W. Va. May 25, 2010). However, if a plaintiff files her claim directly into the MDL in the Southern District of West Virginia, as Ms. Flores-Banda did in this case, I consult the choice-of-law rules of the state in which the plaintiff was implanted with the product. *See Sanchez v. Boston Scientific Corp.*, 2:12-cv-05762, 2014 WL 202787, at *4 (S.D. W. Va. Jan. 17, 2014) ("For cases that originate elsewhere and are directly filed into the MDL, I will follow the better-reasoned authority that applies the choice-of-law rules of the originating jurisdiction, which in our case is the state in which the plaintiff was implanted with the product."). Ms. Flores-Banda received the Obtryx implantation surgery in Texas. Thus, the choice-of-law principles of Texas guide this court's choice-of-law analysis.

The parties agree, as does this court, that these principles compel application of Texas law to the plaintiff's claims. In tort actions, Texas adheres to the Restatement (Second) of Conflict of Laws. *Gutierrez v. Collins*, 583 S.W.2d 312, 318 (Tex. 1979). Under Section 145 of the Second Restatement, the court must apply the law of the state with the most "significant relationship to the occurrence and the parties." Here, Ms. Flores-Banda resides in Texas, the product at issue was purchased in Texas, and the product was implanted in Texas. Thus, I apply Texas's substantive law—including Texas's statutes of limitations—to this case.

### III. Discussion

Because this case prompts two different statutes of limitations, I split my analysis into

two categories: (1) Ms. Flores-Banda's non-warranty claims, which have a two-year statute of limitations; and (2) Ms. Flores-Banda's warranty claims, which have a four-year statute of limitations.

### A. Non-Warranty Product Liability Claims

Under Texas law, the statute of limitations for personal injury actions is two years. Tex. Civ. Prac. & Rem. Code Ann. § 16.003(a). Accordingly, a plaintiff must file her claims within two years of the date the alleged wrongful act caused her injury. *Childs v. Haussecker*, 974 S.W.2d 31, 36 (Tex. 1998). This period, however, may be tolled by application of the discovery rule. The discovery rule tolls accrual "until a plaintiff knows or, through the exercise of reasonable care and diligence, should have known of the wrongful act and resulting injury." *Id.* (internal quotations and citation omitted); *see also Woodruff v. A.H. Robbins Co.*, 742 F.2d 228, 230 (5th Cir. 1984) ("[T]he Texas discovery rule . . . provides that certain 'inherently undiscoverable causes of action' do not accrue until the plaintiff learns or reasonably should have learned of the negligent cause . . . .").

Ms. Flores-Banda filed this action on March 6, 2013. (Short Form Compl. [Docket 1]). BSC argues that Ms. Flores-Banda knew or should have known of the wrongful act and resulting injury on March 20, 2006. (*See* Mem. in Supp. [Docket 20], at 8). By that date, BSC generally argues, Ms. Flores-Banda experienced the injuries alleged in her case, sought medical treatment for those injuries, and underwent surgery to have the Obtryx removed. (*Id.*). More specifically, BSC references the following facts in support: (1) Dr. Guillermo Rowe recorded notes, wherein he suggested the possibility that the entire Obtryx needed to be removed; (2) Ms. Flores-Banda personally attributed her health issues to the Obtryx; and (3) Ms. Flores-Banda decided to have the Obtryx removed after consulting with Dr. Steven D. Maislos. (*Id.* at 7–8). When viewed in

the light most favorable to the nonmovant, the facts are not as indisputable as BSC frames them to be.

First, with regard to Dr. Rowe's statement that the Obtryx needed to be removed, it is important to point out that Dr. Rowe offered no opinion on the specific cause of Ms. Flores-Banda's complications. (Rowe Dep. [Docket 55-3], at 61:13-61:16; 64:8-64:24). Moreover, as BSC admits, Dr. Rowe only *considered* removal of the Obtryx in 2006; he did not unequivocally express the need to do so. (*See* Dr. Guillermo Rowe's Notes Dated January 30, 2006 [Docket 20-3]; Rowe Dep. [Docket 20-1], at 33:4-33:15). Accordingly, a reasonable juror could find that Ms. Flores-Banda was not aware, and should not have been aware, of the wrongful act and resulting injury. To hold otherwise would require this court to make impermissible inferences in the moving party's favor.

Second, a reasonable juror could find that Ms. Flores-Banda's belief that her injuries were caused by the Obtryx was merely subjective, which does not suffice to establish accrual under Texas law. *Childs*, 974 S.W.2d at 43 ("[A] diligent plaintiff's mere suspicion or subjective belief that a causal connection exists between [the wrongful cause] and his symptoms is, standing alone, insufficient to establish accrual as a matter of law.").[1] Importantly, Texas law on this point differs from that of other jurisdictions as applied in factually similar cases. *See, e.g.*, *Smothers v. Boston Scientific Corp.*, Case No. 2:12-cv-04078 (S.D. W. Va. July 11, 2014) (holding that the plaintiff's claims were barred in light of her deposition testimony because, under Massachusetts law, the plaintiff cannot survive summary judgment if she cannot

---

[1] In the related context of latent diseases, the Supreme Court of Texas has even explained that "[a] cause of action should not be deemed to accrue absent some objective verification of a causal connection between injury and [the wrongful cause of the injury], provided that the failure to obtain that verification is not occasioned by a lack of due diligence." *Id.*; *see also In re Mirapex Prods. Liab. Litig.*, 735 F. Supp. 2d 1113, 1119 (D. Minn. 2010) (applying Texas law) ("'Objective verification' does not mean a scientific study is required before a claim will accrue; it simply means the limitations clock does not start running the first time a plaintiff entertains subjective, unverified suspicions about what is causing his illness.").

6

"demonstrate a reasonable expectation of proving the claim was timely filed"). Accordingly, here, without some sort of objective verification that the Obtryx caused Ms. Flores-Banda's injuries, summary judgment is not warranted under application of Texas's discovery rule.

Finally, a reasonable juror could find that Ms. Flores-Banda did not know, or should not have known, the wrongful act and resulting injury when Dr. Maislos expressed his plan to remove the Obtryx in March 2006. In fact, as Ms. Flores-Banda argues, Dr. Maislos diagnosed the cause of Ms. Flores-Banda's symptoms as a failed "AP repair with TOT sling," which could lead a reasonable juror to conclude that, at the time, it was Ms. Flores-Banda's belief that failed anterior prolapse repair—and not necessarily the device itself—contributed to her injuries. (Dr. Steven Maislos's Notes Dated Mar. 8, 2006 [Docket 54-6], at 1–2). Moreover, Dr. Maislos plans to testify as an expert for BSC in a related matter and has opined that injuries akin to those experienced by Ms. Flores-Banda are not "indicative of a defect in the sling." (Expert Designation of Dr. Steven Maislos Dated Nov. 10, 2014 [Docket 54-7], at 8). Also, Ms. Flores-Banda testified that neither Dr. Maislos nor any other medical professional ever discussed any association between the Obtryx and her complications. (Flores-Banda Dep. [Docket 54-2], at 244:17-245:10). At a minimum, following her consultation with Dr. Maislos, a reasonable juror could find that Ms. Flores-Banda was not aware, and should not have been aware, of the wrongful act and resulting injury.

In the end, this determination is a fact question left to the jury. *See Childs*, 974 S.W.2d at 44 ("Inquiries involving the discovery rule usually entail questions for the trier of fact."). On this reasoning, and bearing in mind my duty to draw all legitimate inferences in favor of the nonmovant, I **DENY** BSC's Motion with respect to Ms. Flores-Banda's non-warranty claims.

### B. Breach of Warranty Claims

Under Texas law, actions for breach of implied and express warranty are governed by a four year statute of limitations. Tex. Bus. & Com. Code Ann. § 2.725. Critically, for warranty claims, accrual begins at the time of delivery—not the time of discovery. *Omni USA, Inc. v. Parker-Hannifin Corp.*, 964 F. Supp. 2d 805, 815 (S.D. Tex. 2013) ("The statute of limitations for breach of express warranty is four years, accruing from the date of delivery, regardless of whether the plaintiff lack knowledge of the breach . . . ."). Here, the Obtryx was implanted in, and thus delivered to, Ms. Flores-Banda on December 12, 2005. Therefore, the statute of limitations for any breach of warranty claim expired on December 12, 2009. Because the plaintiff did not file her complaint until March 6, 2013, her breach of warranty claims are barred by the statute of limitations. Accordingly, her claims for express and implied breach of warranty are **DISMISSED**, and BSC's Motion on these claims is **GRANTED**.

### IV. Conclusion

As explained above, the defendant's Motion is **GRANTED in part** and **DENIED in part**. The court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: March 12, 2015

JOSEPH R. GOODWIN
UNITED STATES DISTRICT JUDGE